UNITED ZINC COMPANIES, Respondent, v. THE GENERAL ACCIDENT ASSURANCE COR-PORATION, LIMITED, Appellant.

**Springfield Court of Appeals, May 2, 1910.**

1. **PLEADING: Sufficiency of Reply: Appeal and Error.** Plaintiff's reply "denied generally each allegation of new matter contained in the answer." *Held*, that although the reply may be insufficient to put in issue the new matter alleged in the answer, yet, as it was not attacked in the trial court except by motion in arrest of judgment filed at a term subsequent to the one at which the case was tried the question is not reviewable by the appellate court.

2. **CONTRACTS: Insurance: Authority of Agent to Modify Written Contract.** The policy of an accident insurance company held by the plaintiff provided for the insurance of plaintiff's employees against accidents while in plaintiff's employ. The policy provided also that a list of the employees should be attached to it. No list was attached, and it was subsequently agreed between plaintiff and the general agent of the insurance company that the list shown by plaintiff's payroll should be the list covered by the policy. *Held*, that the general agent had a right to make this agreement so as to bind the defendant, notwithstanding the provisions in the policy to the contrary.

3. ———: ———: ———. Regardless of what the laws of other States may be, the question is now finally settled in this State that the agents of insurance companies having authority to countersign, issue and deliver policies' and receive premiums may waive stipulations in the policies which purport to be essential to their validity, although such policies contain a stipulation that no agent has power to waive its provisions unless the waiver be specified in writing signed by some officer or agent and attached thereto.

4. ——— :———: ———. The powers of an agent in regard to varying the terms of an insurance contract previous to loss are more readily implied than the power to waive proofs of compliance after loss.

5. **INSURANCE: Parol Contracts.** An insurance contract may rest in parol.

6. **PRINCIPAL AND AGENT: Notice to Agent: Contracts: Public Policy: Insurance.** As a general rule, notice to the agent is notice to the principal, and for an insurance company, with its president in a foreign land, establishing a general office in the United States, to provide that notice to any of its general agents in the United States, or any knowledge that they shall obtain relating to any business of the company in the United States, shall not be notice or knowledge to the company, is unreasonable and will not be upheld by the courts.

7. ————: **Authority of Agent.** The responsibility of the principal for the acts of the agent is not measured alone by the terms of the original power conferred on the agent, but also by the subsequent power, written of parol, expressly conferred, or such as is necessarily implied from the conduct of the principal, and of his agent with his knowledge, and from their course of business, which estop the principal from denying the power of the agent to do the particular act relied on.

8. **PLEADING: Insurance: Failure to Comply with Conditions of Policy Must be Pleaded.** In a suit on an insurance policy where the answer of the company does not plead a failure to furnish notice or proof of the death as required by the terms of the policy, the court did not err in refusing to submit this question to the jury.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston*, Judge.

AFFIRMED.

*McPherson & Hilpirt* for appellant.

(1) Plaintiff's reply to the said amended answer, "Denied generally each allegation of new matter in the said answer contained," denied nothing, and the facts pleaded in said answer are confessed to be true. Long v. Long, 79 Mo. 644; Snyder v. Free, 114 Mo. 360; Bowles v. Bennington, 136 Mo. 522; Young v. Schofield, 132 Mo. 650; Dezell v. Casualty Co., 176 Mo. 279; Betz v. Telephone Co., 121 Mo. App. 473. (2) The defendant had the right to limit the authority of its agent as was done in this case. Burnham v. Insurance Co., 63 Mo. App. 85; Greenwood v. Insurance Co., 27 Mo. App.

401; Loeb v. Insurance Co., 99 Mo. 50.    (3)    Express limitation of the power and authority of an agent deny-ing him authority to waive or alter that which goes to the validity of the contract of insurance and knowledge of which limitation is brought home to the assured are binding on the assured.    Wolf v. Insurance Co., 75 Mo. App. 337; Loehner v. Insurance Co., 17 Mo. 247; Insur-ance Co. v. Fletcher, 117 U. S. 519; Greenwood v. In-surance Co., 27 Mo. App. 412; Sprague v. Insurance Co., 49 Mo. App. 423; Shoop v. Insurance Co., 51 Mo. App. 286; Lama v. Insurance Co., 51 Mo. App. 447; Cook v. Insurance Co., 84 Mich. 12; Marvin v. Insurance Co., 85 N. Y. 278; Bank v. Insurance Co., 62 Tex. 461.

*H. H. Bloss* for respondent.

(1)    If the case was tried as though a sufficient re-ply had been filed, no advantage can be taken of the fail-ure to file any reply at all.    Smith v. St. Joseph, 45 Mo. 450; Howell v. Reynolds, 51 Mo. 156; Foley v. Alkire, 52 Mo. 317; Heath v. Goslin, 80 Mo. 310; Turner v. But-ler, 126 Mo. 131.    (2)    Mr. Bishop's right to make the new arrangement, not withstanding restrictions in the policy to the contrary, was under the evidence properly submitted to the jury.    Rudd v. Insurance Co., 120 Mo. App. 1; King v. Insurance Co., 101 Mo. App. 163; Par-sons v. Insurance Co., 132 Mo. 583; Langford v. Insur-ance Co., 97 Mo. App. 79; James v. Ass'n, 148 Mo. 1; Springfield Steam L. Co. v. Insurance Co., 151 Mo. 90; Thompson v. Insurance Co., 169 Mo. 12; London G. & A. Co. v. Coal Co., 103 Mo. App. 546.    (3)    As we un-derstand the law the insurance becomes effective as of the date the agreement is made, in this case, to the effect that it should cover the men on the plaintiff's list of employees, and it makes no difference that the policy was delivered and premium actually received after-wards.    Brown v. Insurance Co., 35 Mo. App. 54; Keim v. Insurance Co., 42 Mo. App. 38; Trask v. Insurance

Co., 53 Mo. App. 125; Worth v. Insurance Co., 64 Mo. App. 589; Baldwin v. Insurance Co., 56 Mo. 151. (4) Where the company denies liability *in toto* on grounds other than that proof of death has not been made, it is a waiver of such proof. Crenshaw v. Insurance Co., 71 Mo. App. 48; Walsh v. Insurance Co., 81 Mo. App. 41; McCormick v. Insurance Co., 56 Mo. 573; Hays v. Casualty Co., 98 Mo. App. 410; Cauveren v. Ancient O. of P., 98 Mo. App. 433; Weber v. Ancient O. of P., 104 Mo. App. 729. (5) Notice to Mr. Bishop and the acts of Mr. Bishop in waiving formal proofs and notice were the acts and notice to defendant itself. Miller v. Insurance Co., 106 Mo. App. 205; Turner v. Insurance Co., 86 Mo. App. 387; Burge v. Insurance Co., 106 Mo. App. 244; McCullah v. Insurance Co., 113 Mo. 606; Schmidt v. Insurance Co., 2 Mo. App. 339; Baile v. Insurance Co., 73 Mo. 371; Thomas v. Insurance Co., 20 Mo. App. 150; Herndon v. Insurance Co., 45 Mo. App. 426.

GRAY, J.—This suit was instituted in the Lawrence county circuit court, May 29, 1907. The cause was in the St. Louis Court of Appeals on a former appeal, and is reported in 125 Mo. App. 41, 102 S. W. 605. After the former appeal had been disposed of, this case was instituted.

In the former case the pleadings were silent as to any subsequent modification of the original contract, and the trial court held that evidence of such modification was not admissible. The plaintiff appealed and the action of the trial court was affirmed. In the present case the petition alleges the making of the contract of insurance and a subsequent modification thereof by an oral agreement between the plaintiff and a Mr. Bishop, a general agent of the defendant.

The answer of the defendant was first, a general denial and also containing a special denial that the defendant agreed to any subsequent modification of contract or policy, or that Mr. Bishop had any authority to agree

to the same. And it was further alleged that all the issues and matters stated and alleged in the petition had been adjudicated and finally determined in the former proceedings.

The reply denied "generally each allegation of new matter contained in the answer." The trial was before a jury and resulted in a verdict in favor of the plaintiff for two hundred dollars, from which the defendant has prosecuted this appeal.

The terms of the policy are set out in the opinion of Judge GOODE in the former case, and therefore it will not be necessary to copy same here. The plaintiff's testimony tends to prove that the plaintiff, a mining corporation engaged in mining in Lawrence county, had in its employ on the first day of May, 1905, a number of men engaged as miners in carrying on its mining operations. The defendant, an accident insurance corporation, organized under the laws of Great Britain, on said day executed and delivered to plaintiff through said Bishop, an accident insurance policy. This policy was offered in evidence and provides for insurance of said employees against accidents while in the employ of the plaintiff. The policy provides that a list of the employees shall be attached to it. The employees were required to pay out of their wages, the sum of twenty-five cents per week, and these sums were to be by the plaintiff deducted from the wages of the different employees and paid to the insurance company from time to time. In addition to the amount collected from the employees, the plaintiff was required to pay ten cents per month for each employee. The benefits in the case of death were two hundred dollars.

The policy provided for immediate notice to be given by the assured or the employee to the company, at its office in Philadelphia, Pennsylvania, of any accident for which benefits might be claimed, and also required affirmative proof of death or loss within a certain time, and that no proceedings for the recovery of any sums

claimed under the contract should be commenced until after three months from the date of filing proof of claim, and that no suit should be brought after six months from the time of the death of the employee entitled to the benefits of the policy.

The testimony on the part of the defendant tends to show that at the time the policy was mailed at Philadelphia, a list of names of the employees was attached to it. This testimony was given by one Charles H. Boyer, the general manager of the defendant. The superintendent of the plaintiff testified that at the time the policy was delivered, no list of names was attached to it, and that Mr. Bishop told him he would procure a list of the names in a few days; that when the list was procured, he informed Mr. Bishop that it was not correct, and that it contained the names of men no longer in the employ of the plaintiff, and in whose places plaintiff had other men; and it was then agreed between the superintendent and Mr. Bishop that this list should not be used, but the list shown by the plaintiff's payroll should be the list covered by the policy.

Ernest Clark commenced to work for the company on the 21st day of May, 1905, and continued to work until the 9th day of June of that year, when he was killed while performing his duties as one of the employees of the plaintiff. The superintendent of plaintiff testified that he had deducted from the wages of Clark the weekly payments required by the policy; that the next day after his death, the general agent of the company appeared and he paid him $69 premium on the policy, and that a part of this money was deducted from the wages of Clark. The evidence further shows that at said time a list of the employees was made, in order to determine the proper amounts to be collected, and that on this list the name of Clark appeared.

The testimony of the superintendent and plaintiff that the policy was to cover the employees whose names

144 App—25

appeared upon the payroll, is corroborated by a letter written to plaintiff by Mr. Bishop, bearing date of July 31, 1905, in which he said: "I am enclosing you herewith list of your employees covered by our 'Blanket contract' issued to your company."

It may be said there was no proof that the defendant company or its agent had any personal knowledge that Mr. Clark was in the employ of the plaintiff, or that any sum had been collected by the plaintiff from him for the defendant on account of the insurance contract until after his death.

Mr. Bishop knew of the accident at the time it happened, and the question of giving notice to the company came up, but in as much as Mr. Clark was not dead, the result of the accident was not definitely known, and Mr. Bishop suggested delay until the result was known. After the death of Clark, Bishop was summoned as a member of the coroner's jury, and the plaintiff's testimony shows that he agreed to give the notice required by the policy, as the plaintiff had no blanks upon which to make the same.

While it may be said that the reply is insufficient to put in issue the new matter alleged in the answer, the question was not raised in the trial court, except by a motion in arrest of judgment filed at a term subsequent to the one in which the cause was tried, and therefore, the matter is not here for review. [Wells v. Electric Co., 108 Mo. App. 607, 84 S. W. 204.]

The question of authority of Bishop to agree to the modification of the contract, is the material point in the controversy. In determining this question, authorities from other States can be of no assistance, as it is stated by the Supreme Court in Thompson v. Traders Ins. Co., 169 Mo. 12, 68 S. W. 889, that the decisions of this State are not in harmony with the decisions of many of the other States of the Union upon this question.

The policy contains the following provisions relating to the power of the agent:

"10. In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of the corporation.

"11. No condition or provision of this policy shall be waived or altered by any one unless by written consent of the President of the corporation, nor shall notice to any agent nor shall knowledge possessed by any agent or by any other person be. held to effect a waiver or change in this contract or any part of it."

The policy was signed in the following manner: "Muir A. Haughton, United States Managers. This Policy not valid until countersigned by A. A. Bishop, Authorized and commissioned agent."

It will be noticed that the president of the corporation does not sign the policy, and that it is signed only by its managers and "authorized commissioned agents." It is a well-settled rule that in construing an insurance policy the construction most favorable to the assured will be adopted. The first clause above quoted provides that in matters relating to the policy, only persons duly authorized in writing shall be deemed the agent of the corporation; and then appears the fact on the policy, that Mr. Bishop is the "authorized and commissioned agent."

The policy does not provide that no agent shall have authority to waiver or alter its provisions, but expressly provides that he shall have such authority, provided it has been given to him by the written consent of the president.

This company was organized under the laws of a foreign country and had established an office in the United States. The provision of the policy that notice or knowledge to any other person than the president, of any fact relating to the policy, should not be notice to the company, cannot be upheld under the decisions of the courts of this State. As a general rule, notice to the agent is notice to the principal, and for an insurance company, with its president in a foreign land, establish-

ing a general office in the United States, to provide that notice to any of its general agents in the United States, or any knowledge that they shall obtain relating to any business.of the company in the United States, shall not be notice or knowledge to the company, is unreasonable, and will not be upheld by the courts.

Regardless of what the laws of other States may be, the question is now finally settled in this State that the agents of insurance companies having authority to countersign, issue and deliver policies and receive premiums may waive stipulations in  policies which purport to be essential to their validity, although such policies contain a stipulation that no agent has power to waive its provisions, unless the waiver be expressed in writing, signed by some officer or agent, and attached thereto.  [Springfield Steam Laundry Co. v. Ins. Co., 151 Mo. 90, 52 S. W. 238; Rudd v. Ins. Co., 120 Mo. App. 1, 96 S. W. 237; Brennen v. Conn. Fire Ins. Co., 99 Mo. App. 718, 74 S. W. 406.]

In Nickells v. Ins. Co., 144 Mo. l. c. 427, 46 S. W. 435, it is declared that the powers of the agent in regard to varying the terms of an insurance contract previous to loss, are more readily implied than the power to waive proofs of compliance after loss.  In the same case it is announced that the great weight of authority is that the contract may be varied by subsequent parol agreement.  And the doctrine that an insurance contract may rest in parol, is declared by the St. Louis Court of Appeals in the very recent case of McIntyre v. Federal Life Ins. Co., 126 S. W. 227.

When we consider the nature and extent  of  the charge in the policy claimed by plaintiff by the parol modification, it was not such a change or modification that would be presumed a general agent did not have authority to make.  The purpose of the insurance policy was for the mutual benefit of the defendant and the employees of plaintiff.  The defendant was to be benefited by the premiums paid on the policy, and the greater the

number of employees plaintiff had, the larger would be the amounts of premiums collected and paid to the defendant. The plaintiff was benefited because of a provision in the policy that if an employee accepted the benefits provided in the policy the same were to be accepted in settlement of any claim the employee had against the plaintiff, and the employee was benefited because in case of an accident, he was to receive certain benefits from the policy. In making contracts, the parties are supposed to take into consideration existing and surrounding circumstances. It must be known by the parties that a list of the names of the employees of plaintiff would not long contain a correct list of the names of the men in its employ; changes in all probability be made from time to time. This theory and understanding of the parties is carried out by the letter of the general agent heretofore referred to, from which we learn that in July following the making of the policy, another list of names was supplied. In making up these lists from time to time, the company must have relied on some agent to act for it, and it seems but natural that that duty should have been dedicated to Mr. Bishop, its general agent. It is not necessary to rely entirely on the doctrine above announced, regarding the powers of agents to waive provisions in a policy, notwithstanding the policy contains a provision denying such power, to hold the company liable for the acts of its general agent in this case, as the measure of the responsibility of the principal for the acts of the agent is not measured alone by the terms of the original power conferred on the agent, but also by the subsequent power, written or parol, expressly conferred, or such as is necessarily implied from the conduct of the principal, and of his agent with his knowledge, and from their course of business which estop the principal from denying the power of the agent to do the particular act relied on. [Thompson v. Traders Ins. Co., 169 Mo. 24, 68 S. W. 889.]

When we consider the purpose of the contract and the parties between whom it was made, and the fact that the defendant is an insurance company organized under the laws of a foreign country, it must be held that persons dealing with Mr. Bishop had the right to presume that in the matters of correcting from time to time the list of names of the employees to be protected by the policy, that he was duly authorized by the defendant company.

What we have just said relating to the benefits to defendant to be derived from the contract, answers the argument that the parol modification of the written contract was not supported by any consideration.

Appellant urges that instruction No. 1 given in behalf of the plaintiff, entitles defendant to a reversal of the judgment, because the court did not submit in that instruction anything concerning notice of the death or proof of loss to the jury. The answer of the defendant did not plead that these conditions of the policy were not complied with, and therefore, the court did not err in refusing to submit the question to the jury. [Weber v. Ancient Order of Pyramids, 104 Mo. App. 729, 78 S. W. 650; Bank v. Assurance Co., 106 Mo. App. 114, 80 S. W. 299.]

In this case the company denied that it had ever issued a policy on Mr. Clark's life, and denied all liability, and therefore, it was not necessary to furnish any proof of the death. [Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560; Cullen v. Ins. Co. of N. A., 126 Mo. App. 412, 104 S. W. 117.]

A careful consideration of the issues has failed to disclose any errors of the trial court entitling appellant to a reversal, and the judgment will be affirmed. All concur.